**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UTICA MUTUAL INSURANCE COMPANY,**

                            **Plaintiff,**

vs.                                                   **Civ. No. 6: 12-CV-1293**
                                                           **(NAM/TWD)**

**EMPLOYERS INSURANCE COMPANY**
**OF WAUSAU and NATIONAL CASUALTY COMPANY,**

                            **Defendants.**

_____

**APPEARANCES:**                                   **OF COUNSEL:**

**HUNTON & WILLIAMS, L.L.P.**               Syed S. Ahmad, Esq.
1751 Pinnacle Drive, Suite 1700
McLean, Virginia  22102
*Attorneys for Plaintiff*

**LARSON KING, L.L.P.**                        Keith A. Dotseth, Esq.
2800 Wells Fargo Place                         Melissa M. Weldon, Esq.
30 East Seventh Street
St. Paul, Minnesota  55101
*Attorneys for Defendant*s

**NORMAN A. MORDUE, Senior United States District Judge**:

**MEMORANDUM DECISION AND ORDER**

      This case arises out of a dispute under certain reinsurance agreements that plaintiff Utica Mutual Insurance Company ("Utica Mutual") entered into with defendants National Casualty Company ("National Casualty") and Employers Insurance Company of Wausau ("Wausau"). Citing the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2), Utica Mutual filed this action seeking a judgment declaring that the attorneys from Hunton & Williams should not be disqualified from representing it in underlying arbitration with defendants. Utica Mutual also asks

the Court, under Section 5 of the Federal Arbitration Act, 9 U.S.C. § 5, to order defendants to follow "the methodology provided in the Agreements to appoint an Umpire and to allow the arbitration to proceed."[1] Alternatively, Utica Mutual "asks the Court to appoint an Umpire selected from three candidates to be nominated by Utica Mutual." Defendants have filed a counterclaim seeking a declaratory judgment disqualifying Hunton & Williams from representing Utica Mutual in the underlying arbitrations. Dkt. No. 30.

Presently, there are three motions before the Court: (1) plaintiff's motion to dismiss defendants' counterclaim (Dkt. No. 34); (2) plaintiff's motion for summary judgment (Dkt. No. 64); and (3) defendants' request under Rule 56(d) of the Federal Rules of Civil Procedure that the Court deny or defer ruling on plaintiff's motion for summary judgment until defendants have had the opportunity to conduct discovery (Dkt. No. 73). For the reasons discussed below, plaintiff's motions are denied and defendants' request to conduct discovery is granted.

**MOTION TO DISMISS**

**Counterclaims**

In their answer (Dkt. No. 30), defendants advance the following counterclaims:

1. National Casualty is an insurance company organized and existing under the laws

---

[1] The Court's subject matter jurisdiction might be in question if this action solely concerned the issue of attorney disqualification because plaintiff would have difficulty meeting the $75,000 amount in controversy requirement of 28 U.S.C. § 1332(a)(2). *See e.g., Nat'l Cas. Co. v. Utica Mut. Ins. Co.*, 3:12-cv-657, 2012 WL 6190084 (W.D. Wis. Dec. 12, 2012) (remanding to state court declaratory judgment action by National Casualty to disqualify Hunton & Williams from representing Utica Mutual in the arbitration because the amount in controversy requirement for diversity jurisdiction was not met). Plaintiffs also seek, however, the appointment of an umpire for the arbitration; thus, the amount at issue in the arbitration: $150,774.44 for Wausau and $351,449.58 for National Casualty, Dkt. No. 34, p.4, may serve to establish the amount in controversy in this action. *See Nw. Nat'l Ins. Co. v. Insco, Ltd.*, 866 F. Supp.2d 214, 219 (S.D.N.Y. 2011) ("in terms of amount in controversy, courts look to the amount at stake in the underlying arbitration when assessing whether diversity jurisdiction exists in a petition to compel arbitration or to appoint an arbitrator.")(citing, inter alia, *R.C. Spenceley, Inc. v. Topa Ins. Co.*, Civ. No. 2010–115, 2011 WL 3742181, at *4 (D.Vi. Aug. 24, 2011) ("Here, in assessing the amount-in-controversy, the Court ... looks beyond the 'initial step' of the issue of the selection of an umpire.")).

of the State of Wisconsin; its principal place of business is in the County of Marathon in the State of Wisconsin.

2. Wausau is an insurance company organized and existing under the laws of the State of Wisconsin; its principal place of business is in Massachusetts.

3. Utica is an insurance company organized and existing under the laws of the State of New York; its principal place of business is in the State of New York.

4. National Casualty and Utica, on the one hand, and Wausau and Utica, on the other hand, are separately parties to a number of reinsurance contracts, including the following three contracts:

- Third Casualty Excess Reinsurance Contract, effective July 1, 1975, though June 30, 1980.
- Second Casualty Excess Contract, effective July 1, 1976, through June 30, 1978.
- Fourth Casualty Excess Reinsurance Contract, effective July 1, 1978, through June 30, 1980.

5. Upon information and belief, Utica was involved in a dispute, and, ultimately, coverage litigation with its insured, Morton-Norwich Products, Inc. ("Morton-Norwich"). During that dispute and litigation, Utica shared a common interest with its reinsurers, including Wausau and National Casualty. Hunton & Williams represented those common interests during the Morton-Norwich dispute and litigation, such representation occurring primarily in the Eastern District of Pennsylvania.

6. Upon information and belief, Hunton & Williams actively engaged in negotiating the settlement of the Morton-Norwich claims.

7. Given Wausau and National Casualty's status as reinsurers of Utica, the efforts of Hunton & Williams to evaluate and settle the Morton-Norwich claims advanced the common interests of Utica, Wausau, and National Casualty in seeking to minimize the liability to Morton-Norwich.

8. Utica has submitted separate billings to National Casualty and Wausau with respect to the settlement of the underlying insurance claims made by Morton-Norwich. Upon information and belief, those billings include amounts billed by Hunton & Williams for its representation in the underlying Morton-Norwich claims.

9. Upon receiving Utica's reinsurance billings, Wausau and National Casualty separately raised various questions in connection with its purported obligation under

-3-

the reinsurance contracts to reimburse Utica for a share of Utica's settlement with Morton-Norwich.

10. Before providing certain information to Wausau or National Casualty concerning Morton-Norwich's claims, Utica insisted that both Wausau and National Casualty execute confidentiality agreements. In those agreements, Utica acknowledged that some of the information might be privileged attorney-client communications (including communications with Hunton & Williams), but that such information was subject to the joint defense privilege. The joint defense privilege applied because Hunton & Williams jointly defended the interests of Utica, Wausau, and National Casualty in regards [sic] to the Morton-Norwich claims that are the subject of the reinsurance billings.

11. On or about May 24, 2012, without having answered Wausau or National Casualty's questions, Utica, through Hunton & Williams, demanded arbitration separately against Wausau and National Casualty on the Morton-Norwich claims.

12. The arbitrations that Utica has demanded are substantially related to the Morton-Norwich claims in which Hunton & Williams represented the interests of Utica, Wausau, and National Casualty.

13. Neither Wausau nor National Casualty has granted Hunton & Williams permission to represent Utica in its proceedings adverse to Wausau or National Casualty.

14. On information and belief, given the role that Hunton & Williams played in evaluating and settling the Morton-Norwich claims, Hunton & Williams' attorneys are likely to be necessary witnesses in the reinsurance arbitration demanded by Wausau. According to Hunton & Williams' own promotional materials, the attorneys involved in the Morton-Norwich claims and the attorneys involved to date in the arbitration that Utica has demanded work in the same department, a department consisting of only fifteen attorneys.

15. On or about June 23, 2012, counsel for Wausau and National Casualty separately responded to Utica's arbitration demands, denying any obligation under the reinsurance agreements to reimburse Utica with respect to the Morton-Norwich claims. Moreover, Wausau and National Casualty both pointed out that the Rules of Professional Conduct applicable to Hunton & Williams required that said firm withdraw from its representation of Utica adverse to Wausau and National Casualty. Such Rules include, but are not limited to, Rules 1.7, 1.9, 1.10, and 3.7 of the ABA Model Rules of Professional Conduct, the Pennsylvania Rules of Professional Conduct, and the New York Rules of Professional Conduct.

16. Hunton & Williams has refused to voluntary [sic] end its adverse representation

against Wausau and National Casualty; moreover, Utica has to date refused to remove Hunton & Williams from this adverse representation.

Claim for Declaratory Relief

17. Wausau and National Casualty reallege and incorporate by reference paragraphs 1 through 16 of this Counterclaim as if set forth here in full.

18. There is an actual and justiciable controversy between Wausau and National Casualty, on the one hand, and Utica, on the other hand, as to whether Hunton & Williams must be prohibited from any further representation of Utica adverse to Wausau and National Casualty in the demanded arbitration.

19. Hunton & Williams' representation of Utica in the arbitration adverse to Wausau and National Casualty would violate the rights of Wausau and National Casualty; it would impede Wausau and National Casualty's right to a fair arbitration proceeding; it would violate the applicable rules of professional conduct; and it should be prohibited.

20. Wausau and National Casualty are entitled to a declaration that Hunton & Williams can no longer be adverse to them in any proceeding relating to the Morton-Norwich claims, expressly including the arbitration that Utica has demanded on these very claims.

Dkt. No. 30, pp. 7-11.

**Standard of Review**

Federal Rule of Civil Procedure 12(b) applies to claims and counterclaims; thus, the Court evaluates a motion to dismiss a counterclaim under the same standard as a motion to dismiss a complaint. *See* Fed. R. Civ. P. 12(b); *MTV Networks v. Curry*, 867 F.Supp. 202, 203 (S.D.N.Y. 1994). To survive a dismissal motion, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.

2007) (quoting *Bell*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor. *See ATSI*, 493 F.3d at 98.

As the Second Circuit explains, when material outside the complaint is presented to the Court on a Rule 12(b)(6) motion,

> the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.
>
> ***
>
> [A] plaintiff's <u>reliance</u> on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (citations and quotation marks omitted; emphasis in original). The Court "need not feel constrained to accept as truth ... pleadings that ... are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F.Supp.2d 371, 405-06 (S.D.N.Y. 2001) (citations omitted) (cited in *Sveaas v. Christie's Inc.*, 452 F. App'x 63, 66 (2d Cir. 2011)). "[T]he contents of the document are controlling where a plaintiff has alleged that the document contains, or does not contain, certain statements." *Roth v. Jennings*, 489 F.3d 499, 511 (2d Cir. 2007).[2]

**Attorney Disqualification**

A court's power to disqualify an attorney derives from its "inherent power to 'preserve the integrity of the adversary process'" *Hempstead Video, Inc. v. Vill. of Valley Stream*, 409 F.3d 127,

---

[2]Although plaintiff has submitted a number of exhibits in support of its motion to dismiss, Dkt. No. 34, they are irrelevant to the disposition of the motion and the Court has not considered them.

132 (2d Cir. 2005) (quoting *Bd. of Educ. of the City of N.Y. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). "In deciding whether to disqualify an attorney, a district court must balance 'a client's right freely to choose his counsel' against 'the need to maintain the highest standards of the profession.'" *GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010) (quoting *Hempstead Video*, 409 F.3d at 132). Further, "[a]lthough the American Bar Association ("ABA") and state disciplinary codes provide valuable guidance, a violation of those rules may not warrant disqualification."[3] *Id*. (citing *Hempstead Video*, 409 F.3d at 132); *see also Blue Planet Software, Inc. v. Games Int'l, LLC*, 331 F.Supp. 2d 273, 275 (S.D.N.Y. 2004) ("When deciding a motion to disqualify an attorney, federal district courts in New York consider various sources of law, including the ABA Model Rules of Professional Conduct, the ABA Model Code of Professional Responsibility, and the New York Code of Professional Responsibility.").

      The Second Circuit has "noted that disqualification motions 'are often interposed for tactical reasons,' and that 'even when made in the best of faith, such motions inevitably cause delay.'" *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791-92 (quoting *Nyquist*, 590 F.2d at 1246).[4] Accordingly, disqualification should only be imposed upon a finding that the continued representation "poses a significant risk of trial taint." *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981). "Where the threat of taint the trial does not exist . . . the litigation should proceed, the remedy for unethical conduct lying in the disciplinary machinery of the state and federal bar." *Bottaro v. Hatton Assoc.*, 680 F.2d 895, 896-97 (2d Cir. 1982).

---

[3]In this case, defendants refer to Rules 1.7, 1.9, 1.10 and 3.7 of the ABA Model Rules of Professional Conduct, the Pennsylvania Rules of Professional Conduct and the New York Rules of Professional Conduct.

[4]The delay in this case has been considerable. The parties have agreed to arbitration but the attorney disqualification dispute has delayed the arbitration for at least two years.

**Concurrent and Successive Representation**

In their counterclaim, defendants assert that the rules governing concurrent and successive representation prohibit Hunton & Williams from representing plaintiff in the arbitration. The Second Circuit has explained:

> One recognized form of taint arises when an attorney places himself in a position where he could use a client's privileged information against that client. The standard for disqualification varies depending on whether the representation is concurrent or successive. In cases of concurrent representation, we have ruled it is prima facie improper for an attorney to simultaneously represent a client and another party with interests directly adverse to that client. The attorney must be prepared to show, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation. In cases of successive representation, we have held that an attorney may be disqualified if: (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Hempstead Video*, 409 F.3d at 133 (internal citations and quotation marks omitted).

Plaintiff argues that defendants fail to state a plausible claim for relief because defendants were not, and are not, Hunton & Williams's clients. Defendants do not allege they are clients as that term is defined in the context of "attorney-client relationship". They allege, rather, that Hunton & Williams represented their "interests" in the litigation that gave rise to the pending arbitration. They further allege that plaintiff's position in the pending arbitration is adverse to theirs and that they did not give Hunton & Williams permission to appear on plaintiff's behalf in an adverse proceeding.

The Second Circuit has held the standards governing professional responsibility "to be applicable even though the interests adverse to those of a law firm's client are not those of another client in the traditional sense." *Glueck*, 653 F.2d at 749 n.4 (citing *Fund of Funds, Ltd. v. Arthur*

-8-

*Andersen & Co.*, 567 F.2d 225, 234 (2d Cir. 1977)). Thus, even if defendants were not Hunton & Williams's clients "in the traditional sense", an inquiry into the potential conflict may still be warranted if "there exist sufficient aspects of an attorney-client relationship". *Id*. at 748-49. Accordingly, the Court concludes that defendants sufficiently allege a relationship with Hunton & Williams to warrant inquiry into the potential conflict.

**Witness-Advocate**

Defendants claim that since the Hunton & Williams attorneys who negotiated the settlement of underlying litigation will need to testify regarding the reasonableness of the settlement, Hunton & Williams should be disqualified from representing plaintiff in the arbitration. Regarding the witness-advocate rule, the Second Circuit has instructed:

> Subsection (a) of [Rule 3.7 of the New York Rules of Professional Conduct] provides, with certain exceptions, that "[a] lawyer shall not act as an advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact." N.Y.R. Prof'l Conduct § 3.7(a). Subsection (b) is broader, as it addresses imputation: "A lawyer may not act as an advocate before a tribunal in a matter if ... another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue [] other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client." *See* N.Y. R. Prof'l Conduct § 3.7(b)(1).
> Rule 3.7 lends itself to opportunistic abuse. "Because courts must guard against the tactical use of motions to disqualify counsel, they are subject to fairly strict scrutiny, particularly motions" under the witness-advocate rule. *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989). The movant, therefore, "bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring [to the witness-advocate's client] is substantial." *Id*. "Prejudice" in this context means testimony that is "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." *Id*.

*Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009); *see also Capponi v. Murphy*, 772 F. Supp. 2d 457, 471 (S.D.N.Y. 2009) ("the so-called 'witness-advocate' rule applies in two situations: those in which the lawyer comes to believe that he or she ought to be called as a witness

on behalf of his client; and those in which the lawyer may be called as a witness other than on behalf of his client.").

Defendants assert that several Hunton & Williams attorneys may be necessary witnesses in the arbitration proceeding regarding the reasonableness of the settlement of the underlying litigation. Defendants further assert that the same attorneys who handled the underlying litigation and settlement and who would, therefore, be necessary witnesses, are also handling the arbitration. Defendants claim these attorneys, and the entire firm, must be disqualified. Defendants' counterclaim plausibly alleges that the witness-advocate rule may apply in this case. Thus, plaintiff's motion to dismiss is denied.

## SUMMARY JUDGMENT

### Standard of Review

Plaintiff moves pursuant to Rule 56 for summary judgment as a matter of law. Defendants oppose plaintiff's motion on the ground that it is premature and cross-move for discovery pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. Summary judgment is appropriate when there is no genuine issue with regard to any material fact, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Stated otherwise, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When deciding a summary judgment motion, the Court must "resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999).

### Concurrent and Successive Representation

In this case, plaintiff principally relies on the pleadings in support of its assertion that there are no genuine issues of material fact.[5] Plaintiff asserts that it is undisputed that defendants are not, and never have been, clients of Hunton & Williams's. It asserts that, consequently, there is no basis for a finding of conflict in connection with concurrent of successive representation. As discussed above, the absence of the traditional attorney-client relationship is not determinative of a disqualification motion in this case. Thus, plaintiff's claim that it is entitled to summary judgment as a matter of law, on this fact alone, is without merit.

Plaintiff further claims that defendants cannot prevail because they do "not claim [they] provided any privileged information to Hunton." Dkt. No. 81. The question is, however, whether Hunton & Williams's "involvement in the prior case was such that it would have had access to relevant privileged information." *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 740 (2d Cir. 1978) ("in order to grant a disqualification motion, a court should not require proof that an attorney actually had access to or received privileged information while representing the client in a prior

---

[5]Plaintiff submits a declaration by Bernard J. Turi, who states:

2. I am employed by Utica Mutual Insurance Company as Senior Vice President Director of Risk and Reinsurance.

3. Morton International, Inc. and related companies (collectively, "Morton" had sought insurance coverage under certain insurance policies issued by Utica Mutual.

4. I was involved in handling the litigation between Utica Mutual and Morton.

5. After the litigation between Utica Mutual and Morton was resolved, Utica Mutual sought reimbursement for certain amounts from its reinsurers, including National Casualty Company and Employers Insurance Company of Wasau.

6. At the time, Utica Mutual was relying on the law firm of Hunton & Williams LLP to assist with various reinsurance matter and had relied on attorneys at that firm in connection with reinsurance matters for more than a decade. When a dispute arose with National Casualty and Employers Insurance, Utica Mutual retained attorneys at Hunton & Williams.

Turi Decl., Dkt. No. 34-2.

case. Such a requirement would put the former client to the Hobson's choice of either having to disclose his privileged information in order to disqualify his former attorney or having to refrain from the disqualification motion altogether."); *see also Hempstead Video*, *supra*, 409 F.3d at 133 ("the attorney whose disqualification is sought had access to, *or was likely to have had access to*, relevant privileged information in the course of his prior representation of the client.") (emphasis added). Thus, plaintiff is not entitled to summary judgment.

**Advocate-Witness**

Plaintiff asserts that even if Hunton & Williams attorneys are necessary witnesses for purposes of the arbitration proceedings, "Rule 3.7 does not create a conflict for the entire firm", thus defendants' claim that Hunton & Williams must be disqualified should be dismissed as a matter of law. A law firm can, however, "be disqualified by imputation . . . if the movant proves by clear and convincing evidence that [A] the witness will provide testimony prejudicial to the client, and [B] the integrity of the judicial system will suffer as a result." *Murray*, 583 F.3d at 178-79. Thus, plaintiff is not entitled to summary judgment.

**Selection of Umpire for Arbitration**

Pursuant to Section 5 of the Federal Arbitration Act, 9 U.S.C. § 5, plaintiff asks the Court to assist with the selection of an umpire for the pending arbitration. This request is premature as the attorney disqualification issue has not been resolved.

**MOTION FOR DISCOVERY**

**Fed. R. Civ. P. 56(d)**

Defendants oppose summary judgment on the basis that discovery is not complete and have submitted an affidavit outlining the facts they seek in discovery, which, they claim, are likely to

create a genuine issue of material fact with respect to disqualification of Hunton & Williams. Defendants have submitted an affidavit from Melissa Weldon, Esq., defendants' attorney, who states:

> 1. I am a partner with the law firm of LARSON • KING, LLP, counsel for Defendants Employers Insurance Company of Wausau ("Wausau") and National Casualty Company ("National Casualty") in the above matter and I submit this Affidavit in support of Defendants' Rule 56(d) Motion.
>
> 2. On behalf of Wausau and National Casualty, I have served Interrogatories, Requests for the Production of Documents, and Requests for Admissions on Plaintiff Utica Mutual Insurance Company ("Utica"). Despite repeated efforts to meet and confer with counsel for Utica, Utica has still failed to fully answer these discovery requests.
>
> 3. Because of Utica's recalcitrance in discovery, we have had multiple conferences before the Magistrate Judge, each time resulting in Utica being ordered to provide additional responses to discovery. Those conferences took place on February 20, 2014, May 5, 2014, and July 15, 2014. (See ECF No. 46, ECF No. 58, and ECF No. 60.)
>
> 4. Following the July 15 conference, the Court requested additional briefing regarding the production of the coverage litigation file maintained by Hunton & Williams. That briefing will be complete on August 5, 2014. (Text Order of July 29, 2014.) Also following that conference, Utica finally agreed to produce a portion of the coverage litigation file; the Court has ordered that this agreed-to production take place by August 4, 2014. (Id.) While I have made repeated requests of counsel regarding the timing and quantity of that production, those requests remain unanswered. Instead, in its required brief to the Court, Utica indicated that it would not produce the documents by August 4 as the Court had ordered. (ECF No. 71.)
>
> 5. Based on the billings that Hunton & Williams has produced, it appears that materials in the coverage litigation file will contain information about its representation of Utica's reinsurers, including Wausau and National Casualty. It is also likely to contain information about the Hunton & Williams attorneys who will be necessary witnesses in the demanded arbitration. We await Utica's production of the portion of the coverage litigation file it has agreed to produce and we await the Magistrate Judge's ruling regarding the production of the remainder of the coverage litigation file.
>
> 6. I have taken two depositions in this case on behalf of Wausau and National Casualty, the depositions of Adam Kelly and Darren Shaw. Three additional

>depositions are scheduled for October—Daniel Hammond on October 20; Bernard Turi on October 21; and Lydia Berez on October 22. Documents produced to date show that each of these individuals was involved in the coverage litigation that underlies the arbitration demanded by Utica. Moreover, in its Rule 26 initial disclosures, Utica identified Mr. Hammond and Mr. Turi as individuals likely to have discoverable information.
>
>7. We also intend to take the deposition of Richard Creedon and three individuals at Hunton & Williams. Utica objected to these depositions, and the Magistrate Judge requested that we wait to raise this issue until after the currently scheduled depositions are completed. In its interrogatory responses, Utica identified Mr. Creedon as an individual that it will likely call as a witness in the arbitration that it has demanded.
>
>8. We expect that the depositions yet to take place will uncover additional evidence regarding Hunton & Williams' representation of Wausau and National Casualty as well as the need for Hunton & Williams to serve as necessary witnesses in the arbitration demanded by Utica. Both are issues of material fact that are in dispute in the current litigation.
>
>9. The deadline for the completion of discovery is December 12, 2014 with any additional motions on discovery due on December 24, 2014. (ECF No. 68.)

Weldon Aff. Dkt. No. 75.

The Second Circuit has stated:

>A party resisting summary judgment on the ground that it needs additional discovery in order to defeat the motion must submit an affidavit pursuant to Federal Rule of Civil Procedure 56(d) (formerly Rule 56(f)), showing: "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts."

*Lunts v. Rochester City Sch. Dist.*, 515 F. App'x 11, 13 (2d Cir. 2013) (*quoting Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995)). Pursuant to Rule 56(d), if a party opposing a motion for summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other

appropriate order. Fed. R. Civ. P. 56(d).

As stated above, plaintiff is not entitled to summary judgment at this point. Indeed, its motion failed in every respect and provided no basis for summary judgment. Moreover, defendants have established in their affidavit that further discovery is required in this case. Thus, this matter is referred back to the very capable United States Magistrate Judge for the completion of discovery.

**CONCLUSION**

For these reasons, it is

**ORDERED** that plaintiff's motion to dismiss (Dkt. No. 34) defendants' counterclaims is **DENIED**; and it is further

**ORDERED** that plaintiff's motion for summary judgment (Dkt. No. 64) is **DENIED** without prejudice to renewal following discovery; and it is further

**ORDERED** that defendants' motion for discovery (Dkt. No. 73) is **GRANTED** and this matter is referred to United States Magistrate Judge Thérèse Wiley-Dancks for the completion of discovery.

**IT IS SO ORDERED.**

Date:  September 22, 2014

Norman A. Mordue
Senior U.S. District Judge